UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 3:22-CR-413-B |
| | § | |
| MYRON JERMAINE WILLIAMS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION & ORDER

Before the Court is Defendant Myron Jermaine Williams's Motion to Suppress Illegally Seized Evidence (Doc. 47). For the following reasons, the Motion is **DENIED**.

I.

BACKGROUND

On October 7, 2022, Dallas Police surveilled a gray Nissan with Texas license plate number "RHJ 7600." Doc. 50-1, Ex. 1, 2.[1] The Nissan was a vehicle suspected to be involved two previous car burglaries. *See* Doc. 50-2, Ex. 5, 12; Doc. 50, Pl.'s Resp., 6 (citing an interview with a detective). Specifically, on August 25, 2022, an alleged victim found his car window broken near White Rock Lake and witnessed someone walk away with the victim's backpack and leave the scene in a Nissan with license plate number RHJ 7600. Doc. 50-2, Ex. 5, 12. Another alleged victim reported a car burglary near White Rock Lake on September 29, 2022. Doc. 50-4, Ex. 7, 9. That victim's stolen credit cards were used at a nearby store, where the person who appeared to use the cards got out of a gray sedan. *See* Doc. 50-4, Ex. 7, 11 (noting police requested videos from the scene); *see also* Doc.

---

[1] The page numbers refer to the ECF pagination.

-1-

50, Pl.'s Resp., 6 (citing an interview with the detective who requested the video). On October 6, police witnessed Williams get out of a gray Nissan with the same license plate number and peer into parked cars near White Rock Lake. Doc. 50-1, Ex. 1, 2.

Dallas Police followed Williams. *See id.* They observed him park in an illegal spot and exit the same gray Nissan. Doc. 1, Compl. ¶ 12; Doc. 50, Pl.'s Resp., 14. Multiple officers approached Williams, placed him in handcuffs, and moved him from where he was standing to a police car. Doc. 50, Ex. 3, 00:35–01:12.[2] While near the police car, an officer said, "We'll explain it to you" and told Williams they "got a couple calls on you." *Id.* at 01:16–01:27. Over three minutes into this encounter, Williams was told to sit in the police car with his feet outside of the car. Doc. 50, Ex. 3, 03:24–3:32. In response, Williams asked if he had to sit down, and police said, "yeah yeah, keep your feet on the outside. Just taking a seat, man." *Id.* at 03:25–03:28. Officers then discovered that Williams had outstanding warrants and formally arrested him. *See* Doc. 50, Ex. 3, 06:58–09:03. An officer searched the Nissan and discovered a gun. Doc. 50-1, Ex. 1, 2.

A grand jury indicted Williams with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Doc. 3, Indictment. The grand jury has since issued a superseding indictment charging Williams with the same offense. Doc. 40, Superseding Indictment. Williams filed a Motion to Suppress his statements made during his October 6 encounter with the officers, any tangible evidence gathered as a result of that encounter or from the search of his car, and any related testimony of law enforcement personnel present for the encounter. Doc. 47, Mot. Suppress, 6. The Court considers the Motion below.

---

[2] The numbers refer to timestamps in Doc. 50, Ex. 3, which depicts body worn camera footage of Dallas Police.

## II.

## LEGAL STANDARDS

A.   *Motions to Suppress*

"The proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Garcia*, 99 F.4th 253, 267 (5th Cir. 2024) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)). But this burden may shift if the challenged police action occurred without a warrant, because "warrantless searches and seizures are *per se* unreasonable unless one of the recognized exceptions applies." *United States v. Thomas*, 997 F.3d 603, 609 (5th Cir. 2021). Thus, if a defendant makes a preliminary showing that a search or seizure occurred without a warrant, the burden shifts to the Government to show "that [the] warrantless search or seizure fits within one of the [recognized] exceptions" to the warrant requirement. *Id.*

B.   *The Fourth Amendment and the Exclusionary Rule*

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. "To supplement the bare text, [the Supreme Court] created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231–32 (2011). The focus of the rule is "not on restoring the victim to his rightful position but on deterring police officers from knowingly violating the Constitution." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Allen*, 625 F.3d 830, 836 (5th Cir. 2010)). "Thus, application of the rule is 'not a

personal constitutional right.' Nor is it automatic in the face of a Fourth Amendment violation." *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir. 2019) (first quoting *Davis*, 564 U.S. at 236 and then citing *Herring v. United States*, 555 U.S. 135, 140 (2009)).

## III.

## ANALYSIS

The Court **DENIES** Williams's Motion to Suppress Illegally Seized Evidence and his request for a suppression hearing.

A.  *Williams's Motion to Suppress Is Denied.*

First, the Court finds that Williams has made a preliminary showing that he was seized without a warrant. *See* Doc. 47, Mot. Suppress, 4–6; Doc. 50, Pl.'s Resp., 4; *Thomas*, 997 F.3d at 609. Therefore, the Government must show that the actions at issue fell within an exception to the warrant requirement. *See Thomas*, 997 F.3d at 609. The Court finds that an exception applies because there was probable cause to believe that Williams committed a criminal offense. *See Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 780 (5th Cir. 2022) (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). The Court also finds that the evidence found during the search of Williams's car should not be suppressed because it was found in a permissible inventory search.

1.  <u>Williams Was Seized Under the Fourth Amendment</u>.

First, Williams was arrested when he was handcuffed and taken to the police car. "[A] Fourth Amendment seizure occurs in one of two ways: either an officer applies physical force or an officer makes a show of authority to which an individual submits." *Sauceda v. City of San Benito*, 78 F.4th 174, 187 (5th Cir. 2023) (quotations omitted). To determine whether a seizure has occurred, "a court must consider all the circumstances surrounding the encounter to determine whether the

police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991); *see also Carroll v. Ellington*, 800 F.3d 154, 170 (5th Cir. 2015). "Examples of such a seizure include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Vardeman v. City of Hous.*, 55 F.4th 1045, 1050–51 (5th Cir. 2022) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The test is objective. *Vardeman*, 55 F.4th at 1051.

Here, Williams was seized because he submitted to a showing of authority. Three officers approached him, grabbed his arms, told him to relax, said he was being detained, and handcuffed his wrists behind his back. Doc. 50, Ex. 3, 00:35–01:00; *cf. Vardeman*, 55 F.4th at 1051-51. They then took Williams over to a police car, leading him away from where he was standing. Doc. 50, Ex. 3, 01:00–01:15. While near the police car, an officer said "we'll explain it to you" and told Williams they "got a couple calls on you." *Id.* at 01:16–01:27. Over three minutes into the encounter, Williams was then told to sit in the police car but to keep his feet outside of the car. *Id.* at 03:23–3:26. In response, Williams asked if he had to sit down, and police said, "yeah yeah, keep your feet on the outside. Just taking a seat, man." *Id.* at 03:25–03:28. A reasonable person in these circumstances would not think he was free to leave. *See Bostick*, 501 U.S. at 439. Instead, Williams's encounter with the police from the moment they approached him indicates that they showed their authority, and he submitted to their show of authority. *See Sauceda*, 78 F.4th at 187. Williams was seized under the Fourth Amendment.

The Government argues that Williams was not seized because he was only detained. *See* Doc. 50, Pl.'s Resp., 10. To determine whether Williams was detained instead of arrested, the Court must determine "whether the police were unreasonable in failing to use less intrusive procedures to conduct their investigation safely." *Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023) (quoting *United States v. Sanders*, 994 F.2d 200, 206–07 (5th Cir. 1993)). Police approached Williams because they believed he was involved in various reported car burglaries. *See* Doc. 50-2, Ex. 5, 12; Doc. 50, Pl.'s Resp., 6 (citing an interview with a detective). The government offers no evidence that police believed Williams was dangerous or a flight risk. Yet multiple officers descended upon him and immediately handcuffed him, rather than trying to ask questions first. Doc. 50, Ex. 3, 00:35–01:12. Because the officers could have used less intrusive means to question Williams, the Court finds he was arrested, rather than detained. *See Sanders*, 994 F.2d at 205.

    2.    <u>Police Had Probable Cause to Seize Williams</u>.

Although the officers lacked an arrest warrant when they seized Williams, they had probable cause to believe that he had committed car burglaries, so the seizure was legal. In the Fifth Circuit, a warrantless arrest is reasonable if the officers have probable cause to support the arrest. *Loftin*, 33 F.4th at 780. "Probable cause for a warrantless arrest exists when all of the facts known by a police officer are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Id.* "[P]robable cause requires only 'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* at 780 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). "Probable cause to arrest 'is not a high bar.'" *Hall v. Trochessett*, 105 F.4th 335, 341 (5th Cir. 2024) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

Officers approached and arrested Williams because they believed he had committed car burglaries. A burglary of a vehicle is when someone (1) breaks and enters any part (2) of another's car (3) "with intent to commit any felony or theft." TEX. PENAL CODE ANN. § 30.04. Here, Williams's gray Nissan was a suspected vehicle in two recent car burglaries. About six weeks before Williams was arrested, a person near White Rock Lake found his car window broken and watched someone drive off with his backpack in a Nissan with the same license plate number as Williams's. Doc. 50-2, Ex. 5, 12. The next month, another victim reported a car burglary near White Rock Lake. Doc. 50-4, Ex. 7, 9. The victim's credit cards were stolen, and the suspect who used the cards got out of a gray sedan. Doc. 50, Pl.'s Resp., 6 (citing an interview with a detective). On the day of Williams's arrest, officers observed him peering into parked cars near White Rock Lake and driving in a gray Nissan with the same license plate number as the one identified in the first car burglary. Doc. 50-1, Ex. 1, 2. This is enough for a reasonable person to believe Williams had committed the other car burglaries. *See Loftin*, 33 F.4th at 780. Therefore, the police had probable cause to arrest him.

Williams argues there was no probable cause because "there was no evidence that" he "did anything unlawful" on the day he was seized. Doc. 47, Mot. Suppress, 11. And he argues that even if his Nissan was connected with previous car burglaries, Williams himself was not. Doc. 56, Def.'s Br., 3. These arguments fail. As discussed above, ample evidence connected Williams's Nissan to earlier car burglaries near White Rock Lake. And on the day of Williams's arrest, officers saw him driving the same Nissan near White Rock Lake and peering into cars. This is enough to connect him to the Nissan and the prior car burglaries. *See Hall*, 104 F.4th at 341 ("Probable cause to arrest is not a high bar.") (quotations omitted). Therefore, there was probable cause to arrest him.

### 3.  The Officers' Search of Williams's Car Did Not Violate the Fourth Amendment.

Finally, the search of Williams's car was permissible. A warrantless search is unreasonable unless it falls within an exception. *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002). Under the community caretaking exception, officers can impound a vehicle that is parked illegally. *See United States v. McKinnon*, 681 F.3d 203, 208 (5th Cir. 2012). Officers may conduct an inventory search of an impounded car without violating "the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger." *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999).

Officers conducted a permissible inventory search of Williams's car. The Dallas Police Department ("DPD")'s General Orders allow an officer to impound a vehicle that is parked illegally and to conduct an inventory search of an impounded vehicle. DPD Gen. Ord. 313.14(A)(1), (2). These provisions are consistent with protecting the car's owner and protecting police from danger and from claims over lost property. *See Lage*, 183 F.3d at 380. Specifically, the inventory search provision requires the officer to retrieve and maintain all evidence found in the car, remove any firearms and valuables, and assign a service number to the vehicle. DPD Gen. Ord. 313.14(A)(2). Here, after arresting Williams, officers used his keys to search his illegally parked car as part of its impoundment and found a firearm in the car. Doc. 50, Ex. 3, 17:00–20:00. Thus, the firearm was found as part of a permissible inventory search and should not be suppressed.

The Court finds that Williams's seizure did not violate his Fourth Amendment rights. Accordingly, the exclusionary rule does not require the Court to suppress any physical evidence or

any of Williams's statements. Neither does it require the related testimony of the officers to be suppressed.

B.  *Williams's Request for a Suppression Hearing Is Denied.*

Second, Williams's request for a suppression hearing is denied. A court must hold a suppression hearing "only when necessary to receive evidence of an issue of fact." *Garcia*, 99 F.4th, 266 (quoting *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983)). "Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *Harrelson*, 705 F.2d at 737. A defendant must allege facts that are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *United States v. Rogers*, 481 F. App'x 157, 159 (5th Cir. 2012) (quoting *Harrelson*, 705 F.2d at 737). If a defendant so alleges, a hearing is required. *Id.* As the Court has explained, Williams has not alleged facts that justify a suppression hearing because, even if Williams proved each fact he alleged, the facts would not warrant suppression. Therefore, his request for a hearing is denied.

IV.

CONCLUSION

For the foregoing reasons, Williams's Motion to Suppress Illegally Seized Evidence and his request for a suppression hearing (Doc. 47) are **DENIED**.

**SO ORDERED.**

**SIGNED: January 13, 2025.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE